ORIGINAL

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2007 JAN 24  P 12: 15

CLERK
U.S. DIST. OF GA.

| | |
|---|---|
| ELIZABETH JOHNSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendant. | ) |

Civil Action File

No. **CV107-012**

## COMPLAINT

NOW COMES the Plaintiff, ELIZABETH JOHNSON, surviving spouse of Leon Foster Johnson, Deceased, and files this, her Complaint against the UNITED STATES OF AMERICA.

1. This is a matter arising under the Federal Tort Claims Act of 1948, 62 Stat. 982, 28 USC § 1346(b), 2671, et seq. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1346(b).

2. Venue is proper in the Federal District Court for the Southern District of Georgia for the reason that the actions complained of in this complaint occurred in this District.

3. Service of process shall be made the date of this filing, pursuant to the Federal Rules of Civil Procedure via registered or certified mail to each of the following: the Civil Process Clerk for the U.S. Attorney's office

pursuant to F.R.C.P. 4(i)(1)(A); upon the Attorney General of the U.S.A. pursuant to F.R.C.P. 4(i)(1)(B); and upon the Secretary of Veterans Affairs / Department of Veterans Affairs pursuant to F.R.C.P. 4(i)(2)(A).

4. At all times material, the decedent, Leon Foster Johnson, was a veteran of the United States Army who served honorably until discharged and was eligible for medical benefits, including continuing medical treatment and care at a U.S. Department of Veterans Affairs hospital.

5. At all times material, plaintiff Elizabeth Johnson, surviving spouse of decedent Leon Foster Johnson, was married to Leon Foster Johnson and they resided in the City of Martinez, Columbia County, Georgia. Elizabeth Johnson currently still resides in Martinez, Georgia.

6. Plaintiff Elizabeth Johnson was duly appointed the personal representative of the Estate of Leon Foster Johnson, and as the surviving spouse is also the proper party to bring this action pursuant to O.C.G.A. § 51-4-2, and brings this action is said capacity.

7. At all times material, defendant the United States of America, Department of Veterans Affairs was engaged in the activity of operating a hospital (here referred to as VA Hospital), a hospital of the United States of America, and providing medical care, treatment, and services through

its agents, employees, physicians, surgeons, specialists nurses, and nurse practitioners to patients in Richmond County, Georgia. All acts and omissions complained of in this complaint occurred while said agents, employees, physicians, surgeons, specialists nurses, and nurse practitioners were acting within the scope of their employment.

8. Leon Foster Johnson, deceased, was a veteran of the United States Army, who served in multiple armed conflicts, was retired from same, and was eligible for medical benefits at the VA Hospital.

9. At all times material and relevant to this complaint, Leon Foster Johnson received continuous medical treatment and care at the VA Hospital in Richmond County, Georgia.

10. Each of the acts or omissions alleged hereinabove and below were the proximate cause of the untimely death of Leon Foster Johnson.

11. All conditions precedent required of the plaintiffs prior to bringing this action have occurred or have been met, including all statutory pre-suit notice and investigation requirements of the Federal Tort Claims Act including 28 U.S.C.A. § § 2401 and 2675.

12. Plaintiffs complied with the pre-suit notification requirements of the Federal Tort Claims Act by filing hand-delivering their administrative claims for sums certain on the prescribed Standard Form 95 with the above-identified VA Hospital and the Department of Veterans Affairs on February 23, 2004, via hand delivery by plaintiff's counsel, undersigned, to said VA hospital.

13. Defendant Department of Veterans Affairs Hospital received the plaintiffs' administrative tort claims, in the form of the Standard Form 95, with accompanying documentation, on said date of February 23, 2004.

14. Extensions of time to respond to the administrative complaint were afforded defendant United States of America, Department of Veterans Affairs, and ultimately the claim was denied.

15. On July 24th, 2006, defendant VA Hospital / Department of Veterans Affairs sent their final denial of the claim, pursuant to 28 U.S.C.A. § 2675, erroneously to the wrong address, and subsequently sent said denial to counsel for Plaintiff on August 4, 2006, indicating that Plaintiff's claim was denied. Plaintiffs file this action now, within the 6-month period provided for under law within 6 months from the original improperly mailed denial.

-4-

16.   Defendant VA Hospital and the Department of Veterans Affairs are an agency of the United States Government and as such, sovereign immunity has been waived the pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § § 2671 to 2680.

17.   At all times material to this complaint, physicians, surgeons, specialists, administrators, nurses, interns, and physician's assistants were employed at the VA Hospital in Augusta, Georgia, to provide medical care and treatment to patients, including Leon Foster Johnson, in accordance with the prevailing standard of care consistent with hospitals in the same or a similar community.

18. This action is one for professional malpractice in which the defendant by and through its agents and employees has failed to exercise the required degree and standard of care and has caused injury to plaintiff and the death of her husband, Leon Foster Johnson, from a want of such care and skill. Plaintiff attaches hereto as Exhibit "1" an Affidavit of Dr. John H. Fullerton, specifically setting forth at least one negligent act or omission claimed to exist and the factual basis for such claim. Said Affidavit is not inclusive of each act, error, or omission that has been committed or may have been committed by the defendant, and plaintiff reserves the right to contend and prove

additional acts, errors, and omissions on part of the defendant and its agents and employees, that reflect a departure by defendant from the requisite standard of care required by law. As a result of the negligence of the defendant, by and through its agents, servants and employees, acting within the scope of their employment, Leon Foster Johnson died from a heart attack / cardio-respiratory arrest / myocardial infarction as set forth more fully hereinabove and below, and in said affidavit.

19. The medical staff at the VA hospital who treated Leon Foster Johnson in the months preceding his death, and specifically the treatment provided or not provided at his outpatient visit of February 19, 2002, failed to follow generally accepted and customary medical practices and failed to exercise the degree of care generally employed by medical professionals in general in the field of medicine under similar conditions and like surrounding circumstances. Their failure to follow these generally accepted and customary medical practices and their failure to exercise such degree of care, caused directly the circumstances which led to Mr. Johnson's death on February 23, 2002 as explained in further detail below.

20. Mr. Johnson was a seventy one year old white male with a well established history of atherosclerotic vascular

disease (ASVD) including coronary artery disease (CAD), with angina and erectile disease (ED), a history of smoking, chronic obstructive pulmonary disease (COPD), prior successful cardiac ablation for supraventricular tachycardia, among other historical conditions and treatment.

21. Mr. Johnson had been followed for many years by the physicians and staff at the VA hospital in Augusta and was maintained on medications, including inhaled bronchodilators, Lanoxin, Celebrex, Aciphex, Dyazide, Prednisone, Nicotine Patch, Alendronate, Metoprolol, Azithromycin, Aspirin, Nitroglycerin, and Viagra (Sildenafil).

22. Mr. Johnson visited the VA Hospital on February 19, 2002. According to the VA records from his outpatient visit dated February 19, 2002, Mr. Johnson was actively being treated for bronchitis, angina, and erectile dysfunction. Mr. Johnson reported on that day and it was noted that he had been experiencing recent sub-sternal chest pain, with radiation of pain suspicious for a cardiac origin. Mr. Johnson was not referred by his physician, or any of the staff at the hospital, to cardiology for an immediate evaluation for probable acute coronary syndrome or any other heart problems. It was also well documented

and well reported that he was taking both nitroglycerin (hereinafter "NTG") and Viagra each week. In fact, on the date of this visit his records reflect, within the same paragraph/sentence in the physician/staff notes in his medical records, that he was taking NTG "which didn't help" and also Viagra simultaneously.

23. On February 23, 2002, after ingesting NTG and Viagra, and during intercourse with his wife, Mr. Johnson collapsed experiencing cardiac arrest. He was emergently transported and resuscitation was attempted by advanced cardiac life support (ACLS), to no avail. He was declared and pronounced dead at Doctor's Hospital and the death was reported to the coroner.

24. Mr. Johnson's death certificate listed myocardial infarction as the cause of death. The coroner, after recording his list of medications found at the scene (the Johnson family home), requested the Georgia Bureau of Investigation (GBI) to perform a toxicology analysis of Mr. Johnson's blood, directing that they look specifically for nitroglycerine and Viagra. Unfortunately the toxicology analysis was unable to be performed by the GBI as a sufficient sample was not provided.

25. The physicians and medical staff were negligent in that they breached the standard of care at the time of the

-8-

February 19, 2002 outpatient visit of Mr. Johnson by not referring this high risk cardiac patient to the cardiologist immediately for urgent evaluation and treatment, including revascularization if needed, for his chest pain concerns and potential heart problems.

26. Additionally, the medical VA physicians and medical staff again breached the standard of care, and compounded Mr. Johnson's situation by negligently and recklessly prescribing and continuing the co-administration of Viagra with a patient also taking NTG, following this visit. This co-administration of NTG and Viagra is a widely-acknowledged absolute contraindication of drugs.

27. Moreover, these VA physicians and staff likewise were negligent in failing to provide and document proper informed consent regarding the heightened risk of cardiac complications, including life-threatening hypotension and sudden cardiac death, and failed to ensure and document that these two prescription medications should never be prescribed or ingested together.

28. Due to these aforementioned breaches of the standard of care, Mr. Johnson was not properly referred immediately to the cardiologist for evaluation and treatment of his coronary artery disease and chest pain complaints, including measures that would have kept Mr.

Johnson from taking NTG and Viagra together, or that would have not allowed the co-administration of NTG and Viagra.

29. Instead of receiving the proper cardiac care, Mr. Johnson was negligently co-administered or continued on the co-administration of the lethal medication combination of NTG and Viagra, and experienced an episode of life-threatening hypotension on February 23, 2002 during sexual intercourse.

30. Due to the hypotension following the ingestion of this lethal drug combination of NTG and Viagra, Mr. Johnson experienced a predictable cardiac arrest and died.

31. Mr. Johnson's resultant premature death was not only directly attributable to the lack of proper cardiac referral and cardiac treatment, but was compounded by Mr. Johnson's compliance with his dangerous prescribed medication regimen of NTG and Viagra. This lethal medication error that continued to be recklessly provided by the VA hospital and its staff, in the context of no proper cardiac specialty care being provided, lead predictably to the sudden cardiac death.

32. Defendant, through its agents and/or employees, negligently failed to properly refer Mr. Johnson immediately to the cardiologist, which would have prevented any life threatening coronary event in the first place. Mr.

Johnson's situation was compounded further by the physicians and staff, during a period of time when proper cardiac care was not being provided, promoted the reckless and dangerous co-administration of Viagra while Mr. Johnson was taking NTG. As such, the VA hospital created a hazardous climate for Mr. Johnson, with his recent history of coronary artery disease and symptoms, whereby there was a high probability of hypotension, cardiac harm, and a bad outcome including sudden cardiac death – as was the result.

33. Mr. Johnson's other non-cardiac medical conditions had been identified and were being clinically treated and maintained. Therefore, more likely than not, they did not contribute substantially to his untimely death. Consequently, if Mr. Leon Johnson had received timely cardiac care and not received the improper NTG/Viagra combination of medications, he would still be alive today.

34. According to Georgia mortality tables consulted, the Commissioner's 1980 Standard Ordinary table, Leon Foster Johnson had a life expectancy of 10.39 years. Dr. Fullerton also opines that Mr. Johnson would have an approximate life expectancy of more than ten years.

35. Plaintiff Elizabeth Johnson has retained Patrick C. Smith, Jr. of The Smith Law Firm, P.C., to represent her in this action in accordance with 28 U.S.C.A. § 2678.

36. Plaintiff and the undersigned counsel request this Court award the plaintiff the statutory percentage of twenty-five (25) percent of any gross amount recovered in this cause of action to be paid to the undersigned attorney by the defendant and deducted from the award to the plaintiffs plus an award of costs to be taxed against the defendant, as provided for by law.

WHEREFORE, plaintiff Elizabeth Johnson respectfully prays for judgment against defendant in the sum of one million, five hundred thousand dollars ($1,500,000), which sum does not exceed the amount of the administrative claim filed in this matter, and interest and costs thereon, in accordance with the law.

Respectfully submitted, this 24th day of January, 2007.

Patrick C. Smith, Jr.
Georgia Bar No. 662144
Attorney for Plaintiff

The Smith Law Firm, P.C.
411 Telfair Street
Augusta, GA 30901
(706) 826-1500 (tel)
(706) 826-1595 (fax)

**STATE OF CALIFORNIA**                                          **EXHIBIT "1"**

**COUNTY OF** *MARIN*

## AFFIDAVIT

Personally appeared before me, an officer duly authorized by law to administer oaths, John H. Fullerton, M.D., who, after first being duly sworn, states upon oath the following:

1. I am John H. Fullerton, M.D., and I am competent in all respects to testify regarding the matter set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I am aware that this Affidavit is being filed with a Complaint in an action for damages alleging professional malpractice. My opinion is based upon over 20 years of training, education, knowledge and experience in teaching and practicing general internal medicine and geriatrics.

2. I am a physician licensed to practice medicine in the State of California. I received an undergraduate degree from the College of William and Mary, in Williamsburg, VA in 1980, and a medical degree from the University of Miami, in Miami, FL in 1985. I currently have a full-time general internal and geriatric practice in California, in the San Francisco area. I clinically instruct primary care medicine including geriatrics to students and internal medicine residents at numerous medical schools and hospitals. I am board certified in both internal medicine and geriatrics by the American Board of Internal Medicine, among other board certifications. A true and accurate copy of my curriculum vitae is attached hereto as Exhibit "A".

3. The opinion that I give in this matter is based upon a comprehensive evaluation of a complete copy of the outpatient and inpatient treatment records of Leon Foster

Johnson, deceased February 23, 2002, from his complete VA medical records provided to me, which include his treatment while at the VA hospital in Augusta, Georgia, through and until his death.

4. It is my opinion that the medical staff at the VA hospital who treated Mr. Johnson in the months preceding his death, and specifically the treatment provided or not provided at his outpatient visit of February 19, 2002, failed to follow generally accepted and customary medical practices and failed to exercise the degree of care generally employed by medical professionals in general in the field of medicine under similar conditions and like surrounding circumstances. Their failure to follow these generally accepted and customary medical practices and their failure to exercise such degree of care, caused directly, in my opinion, circumstances which led to Mr. Johnson's death on February 23, 2002 as explained in further detail below.

5. Mr. Johnson was a seventy one year old white male with a well established history of atherosclerotic vascular disease (ASVD) including coronary artery disease (CAD), with angina and erectile disease (ED), a history of smoking, chronic obstructive pulmonary disease (COPD), prior successful cardiac ablation for supraventricular tachycardia, among other historical conditions and treatment.

6. Mr. Johnson had been followed for many years by the physicians and staff at the VA hospital in Augusta and was maintained on medications, including inhaled bronchodilators, Lanoxin, Celebrex, Aciphex, Dyazide, Prednisone, Nicotine Patch, Alendronate, Metoprolol, Azithromycin, Aspirin, Nitroglycerin, and Viagra (Sildenafil).

7. According to the VA records from his outpatient visit dated February 19, 2002, Mr. Johnson was actively being treated for bronchitis, angina, and erectile dysfunction. Mr. Johnson reported that he had been experiencing recent sub-sternal chest pain, with

radiation of pain suspicious for a cardiac origin. He was not referred to cardiology for a stat evaluation for probable acute coronary syndrome. It was also well documented and well reported that he was taking both nitroglycerin (NTG) and Viagra each week.

8. On February 23, 2002, after ingesting NTG and Viagra, and during intercourse with his wife, Mr. Johnson collapsed experiencing cardiac arrest. He was emergently transported and resuscitation was attempted by advanced cardiac life support (ACLS), to no avail. He was declared and pronounced dead at Doctor's Hospital and the death was reported to the coroner. Mr. Johnson's death certificate listed myocardial infarction as the cause of death.

9. The physicians and medical staff were negligent in that they breached the standard of care at the time of the February 19, 2002 outpatient visit of Mr. Johnson by not referring this high risk cardiac patient to the cardiologist immediately for urgent evaluation and treatment, including revascularization if needed.

10. Additionally, the medical VA physicians and medical staff again breached the standard of care, and compounded Mr. Johnson's situation by negligently and recklessly prescribing and continuing the co-administration of Viagra with a patient also taking NTG, following this visit. This co-administration of NTG and Viagra is a widely-acknowledged absolute contraindication of drugs.

11. Moreover, these VA physicians and staff were likewise failed to provide and document proper informed consent regarding the heightened risk of cardiac complications, including life-threatening hypotension and sudden cardiac death, and failed to ensure and document that these two prescription medications should never be prescribed or ingested together.

12. Due to these aforementioned breaches of the standard of care, Mr. Johnson was not properly referred immediately to the cardiologist for evaluation and treatment of his coronary artery disease and chest pain complaints, including not allowing the co-administration of NTG and Viagra.

13. Instead of receiving the proper cardiac care, Mr. Johnson was negligently co-administered the lethal medication combination of NTG and Viagra, and more likely than not experienced an episode of life-threatening hypotension on February 23, 2002 during sexual intercourse.

14. Due to the hypotension following the ingestion of this lethal drug combination of NTG and Viagra, Mr. Johnson experienced a predictable cardiac arrest and died.

15. In my opinion, Mr. Johnson's resultant premature death was not only attributable to the lack of proper cardiac referral and cardiac treatment, but was compounded by Mr. Johnson's compliance with his dangerous prescribed medication regimen of NTG and Viagra. That is to say, this lethal medication error that continued to be recklessly provided by the VA hospital, in the context of no proper cardiac specialty care being provided, lead predictably to the sudden cardiac death.

16. In summary, the VA physicians and staff negligently failed to properly refer Mr. Johnson stat to the cardiologist, which would have more likely than not prevented any life threatening coronary event in the first place. Mr. Johnson's situation was compounded further by the physicians and staff, during a period of time when proper cardiac care was not being provided, promoted the reckless and dangerous co-administration of Viagra while Mr. Johnson was taking NTG. As such, the VA hospital created a hazardous climate for Mr. Johnson, with his recent history of coronary artery

disease and symptoms, whereby there was a high probability of hypotension, cardiac harm, and a bad outcome including sudden cardiac death.

17. Mr. Johnson's other non-cardiac medical conditions had been identified and were being clinically treated and maintained. Therefore, more likely than not, they did not contribute substantially to his untimely death. Consequently, it is my opinion that if Mr. Leon Johnson had received timely cardiac care and not received the improper NTG/Viagra combination of medications, he would still be alive today, with an approximate life expectancy of at least ten (10) years.

18. It is not the purpose of this Affidavit to set forth each and every criticism which I have now or may have in the future regarding the care and treatment rendered by the medical staff at the VA hospital to Mr. Johnson. I understand that this Affidavit will be used in connection with the filing of a civil action.

FURTHER AFFIANT SAYETH NOT.

John H. Fullerton, M.D.

Subscribed and sworn to before me this

22ⁿᵈ day of _January_ (month), 2007.

NOTARY PUBLIC

My Commission Expires: _10/01/09_

ROBERT ALLAN JACOBSON
Commission # 1610332
Notary Public - California
Marin County
My Comm. Expires Oct 1, 2009

# Curriculum Vitae



**John H. Fullerton, MD, CMD, FACP, AGSF**
**Internal Medicine/Geriatrics**
**Assistant Clinical Professor Of Medicine**
**UCSF Medical School**

Hampton Health, Ltd
11 Piper Court
Fairfax, CA 94930
Fax: 415.459.2774

---

## MEDICAL LICENSURE:

**California Medical License #G059000** - Current (08/86-Present)
**Florida Medical License #ME77278** - Current (01/05/99-Present)
**DEA License (CA)** - Current (08/86-Present)
**Medical Insurance Exchange of California (MIEC- $1M/$3M)**-(04/91-Present)

## BOARD CERTIFICATIONS/CERTIFICATIONS OF ADDED QUALIFICATIONS (FOCUSES):

- **American Board of Internal Medicine (ABIM)**-Board Certified in Internal Medicine (09/88-Present)
- **ABIM**-Board Certified in Geriatrics-04/94 (Recertified: 11/02/05)
- **American Board of Hospice & Palliative Medicine (ABHPM)** – Board Certified (01/06-Present)
- **American Medical Directors Association (AMDA)** – Certified (CMD: 12/04-Present)
- **American Academy of Home Care Physicians (AAHCP)**-Certified (11/03-Present)

## PRESENT ACADEMIC RANK AND POSITION:

- **University of California, San Francisco (UCSF) Medical School:** Assistant Clinical Professor of Medicine (2003-Present)
- **Yale University Medical School:** Clinical Instructor- Dept. of Medicine (04/06-Present)
- **Stanford University School of Medicine:** Clinical Preceptor (Primary Care Associate's Program: 2001- Present)
- **St. Mary's Medical Center/Sister Mary Philippa Health Center:** Core Clinical Faculty for the Hospital-Based Internal Medicine Residency Program- Clinical Preceptor (02/06-Present)
- **American Academy of Family Physicians (AAFP):** Clinical Educator Certificate ("Active Teacher in Family Medicine" 2002- Present)

## EDUCATIONAL EXPERIENCE:

**College of William & Mary**
Williamsburg, VA
B.S., Biology: 05/80 (Graduated with Honors)

**University of Miami Medical School**
Miami, FL
Graduated with Medical Degree (MD):05/85

**EXHIBIT "A"**

1

## POST-DOCTORAL TRAINING:

**Medical Internship: 06-85/06-86**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115
Program Director: John Gamble, MD

**Medical Residency: 06/86-06/88**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115
Program Director: John Gamble, MD

**Chief Medical Residency: 06/88-06/89**
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94115
Program Director: John Gamble, MD

## OTHER:

**Advanced Cardiac Life Support (ACLS)**-certified (06/84-06/03)
**ACLS Instructor** - 1990
**Code Blue Team Leader**-04/91-06/97

## AWARDS/HONORS:

- **Resident of the Year: 1988**
  Pacific Presbyterian Hospital
  San Francisco, California 94115
- **"Dr. John Fullerton and Dr. Patrick Tekeli Day in San Francisco": 12/14/94**
  Award given by the Mayor of San Francisco (Frank Jordan) for outstanding patient care, noting distinguished service in areas of geriatrics, HIV/AIDS, hospice & terminal care, and transplant medicine.
- **"2003 California Physician of the year"** (Congressional)
- **"2004 Pioneer of Healthcare Reform"** (Congressional)

## EDUCATION/TEACHING/HOSPITAL PRIVELEGES:

**Teaching Attending in General Internal Medicine/Family & Community Medicine @ the San Francisco Free Clinic (SFFC): 1999-Present**
4900 California Street, San Francisco, California 94118 Medical Director – Patricia Hellman Gibbs, MD Staff Clinical Instructor in Primary Care for the local, urban, under-served community (eg. patients who have no health insurance) – primary care (including adolescents and general adult medicine) clinical precepting (typically twelve sessions per month) senior medical students form UCSF and Yale, medical interns and residents from UCSF (and surrounding programs), and PA/NP students from Stanford University Medical School.

2

## *EDUCATION/TEACHING/HOSPITAL PRIVELEGES (con't):*

**Stanford University School of Medicine**
**Clinical Preceptor-Internal Medicine/Geriatrics**
**Primary Care Associate Program**
1215 Welch Road, Modular G
Palo Alto, California 94305-5408

**University of California, San Francisco School of Medicine**
**Assistant Clinical Professor of Medicine @ UCSF**
**Department of Medicine**
**Primary Care Program**
300 Parnassus
San Francisco, California 94143

**Yale University Medical School**
**Clinical Instructor: Primary Care Clerkship**
**Department of Medicine**
367 Cedar Street
New Haven, CT  06510-8046

**St. Mary's Medical Center**
**Medical Faculty (Sister Mary Philippa Health Center)**
**Department of Medicine: Medical Staff**
450 Stanyon Street
San Francisco, California 94117

**Marin General Hospital (MGH)**
**Department of Medicine: Medical Staff**
Current Committee Appointment: Laboratory Liaison Committee
250 Bon Air Road
Greenbrae, California  94904

## *PROFESSIONAL SOCIETIES/AFFILIATIONS:*

- Association of Clinical Faculty (ACF) @ UCSF-Lifetime Member
- American College of Physicians/American Society of Internal Medicine (ACP/ASIM)-Fellow (FACP)
- Society of General Internal Medicine (SGIM)-member
- American Geriatrics Society (AGS)-Diplomate/Fellow (AGSF)
- The Gerontological Society of America (GSA)-member
- American Academy of Home Care Physicians (AAHCP)-member & certified
- American Academy of Hospice and Palliative Medicine (AAHPM)-Diplomate & Board Certified (ABHPM)
- American Medical Directors Association (AMDA)-member & certified (CMD)
- The California Institute of Gerontology and Geriatrics-member
- American Obesity Association (AOA)-member
- California Medical Association (CMA)-member
- American Diabetes Association (ADA)-member

3

### *PROFESSIONAL SOCIETIES/AFFILIATIONS (con't):*

- San Francisco Medical Society (SFMS)-member
- California Geriatrics Society (CGS)-member
- Marin Medical Society - member
- Florida Geriatrics Society (FGS)-member
- Florida Medical Directors Association (FMDA)-member
- Society of Hospital Medicine (SHM) – member
- American Association of Geriatric Psychiatry (AAGP)- affiliate
- Southern Medical Association (SMA)-member
- California Association of Long Term Care Medicine (CALTCM)-member
- American Medical Association (AMA)-member
- The California Council on Geriatrics and Gerontology (CCGG)-member

### *INTRAMURAL PRESENTATIONS:*
**California Pacific Medical Center (formerly Pacific Presbyterian Hospital)**
**PO Box 7999/Clay @ Buchanan Street**
**San Francisco, California 94115**
- Intern/ Resident Selection Committee
- Ethics Committee (Director: sub-Acute Services)
- Journal Club Moderator for the Medical Residency Training Program
- Medical Record Committee
- Pharmacy and Therapeutics Committee
- Infection Control Committee
- Medical Executive Committee (During Chief Residency)
- Morbidity & Mortality Conference
- Utilization Review (Co-development of Sub-Acute Practice Guidelines)
- Geriatric Center Steering Committee
- Rehabilitation Advisory Committee
- AIDS Advisory Committee

**Petaluma Valley Hospital**
**400 North McDowell**
**Petaluma, California 94954**
- Ethics Committee - 07/02-05/03

### *CLINICAL PRACTICE, INTERESTS, AND ACCOMPLISHMENTS:*
**Out-Patient Clinician Educator in General Internal Medicine & Geriatrics:**

> **San Francisco Office (03/04-Present)**
> Clinical responsibilities (including geriatrics) as part of a busy primary care office with PA support
> 1700 California Street, Suite 470
> San Francisco, California 94109
> Co-Founders: John Fullerton, M.D., Kate McElroy, PA-C

4

*CLINICAL PRACTICE, INTERESTS, AND ACCOMPLISHMENTS (con't):*

**Marin Office (Aegis of Corte Madera – Medical Director, 9/03-Present)**
On-site geriatric clinic with local assisted living, Alzheimer's assisted living, house calls, hospice & palliative medicine practice with Physician Assistant (PA) support.  Designated as a Stanford Primary Care clinical teaching site for the Primary Care Associates Program.
5555 Paradise Drive, 2nd Floor
Corte Madera, California 94925
Co-Founder(s): John Fullerton, M.D., Kate McElroy, PA-C

**SNF Medical director @ The Redwoods (05/2006-Present)**
40 Camino Alto
Mill Valley, CA 94941

**San Francisco Office (10/01-3/04)**
Out-Patient and In-Patient clinical responsibilities (including geriatrics) as part of a busy four physician primary care group, practicing adjacent to California Pacific Medical Center (San Francisco, CA).
2100 Webster Street, Suite 416 & 418
San Francisco, California  94115
Founder: Allan E. Jackman, MD

**Sonoma Office (10/01-03/03)**
Clinical responsibilities (including geriatrics) as part of a primary care practice.  Large hospital-based practice in adjacent Petaluma Valley Hospital (Petaluma, CA), while functioning as a "de facto" hospitalist.
1456 Professional Drive, Suite 406
Petaluma, California  94954  Co-Founders: John H. Fullerton, MD and Stephen L. Steady, MD

**Hospital-based General Internist & Geriatrician: 04/91-06/97**
**Vice Chairman of Medicine-Garden Sullivan Hospital (GSH)**
**Clinical Director-Garden Unit (AIDS/HIV/Hospice/Palliative Medicine)**
As part of co-founding and managing the early "hospitalist" physician group in San Francisco, CA, the responsibilities encompassed Clinical, Educational, Administrative, and Organizational roles, particularly in areas of General Internal Medicine, Geriatrics, HIV/AIDS Medicine, Physical Medicine & Rehabilitation, and Hospice & Palliative Medicine.  While functioning as the "Clinical Director" @ GSH in an active internal medicine residency program, was instrumental in both quality assurance and utilization review.  Spearheaded the co-design of clinical guidelines and the general programmatic development for the internal medicine residency program, particularly within the sub-acute facilities in the medical center.  Also directed the emergency services (ACLS) response team (the "code blue team") and designed and submitted the earliest method patent application for hospitalist care, entitled: "The Sub-Acute Solution-A Method for Hospital-Based Skilled Nursing Facility (SNF) Medical Care & Training".
California Pacific Medical Center (formerly Pacific Presbyterian Hospital)
PO Box 7999/Clay @ Buchanan Street
San Francisco, California 94118

5

## *CLINICAL PRACTICE, INTERESTS, AND ACCOMPLISHMENTS (con't):*

**Active Medical Staff (Hospital-Based and Out-Patient): 2001-2003**
Petaluma Valley Hospital
400 North McDowell
Petaluma, CA 94954
(707)- 778-1111

**Courtesy Medial Staff**
**Teaching Attending/Department of Medicine-1999-2002**
California Pacific Medical Center
Internal Medicine Residency Program
PO Box 7999 San Francisco, California 94115
Chief of Medicine-Martin Brotman, MD, FACP

**Active Medical Staff**
**Teaching Attending/Department of Medicine: 1991-1999**
California Pacific Medical Center
Internal Medicine Residency Program
PO Box 7999 San Francisco, California 94115
Chief of Medicine-Martin Brotman, MD, FACP

**Medical Attending (Hospital-Based and Outpatient)-Department of Medicine: 10/89-01/91**
**Vice Chief of Medicine (10/89-08/90)**
**Acting Chief of Medicine (08/90-01/91)**
The responsibilities encompassed Clinical, Administrative, Educational, and Research roles as part of an active internal medical residency program that included managing patients in the general medical outpatient clinics (including managing the clinic for systemic manifestations of ocular disease), co-directing the employee health/travel health clinics for four thousand (4000) hospital employees, and overseeing the preoperative medical management of inpatients.
King Khaled Eye Specialist Hospital (KKESH)
Riyadh, Kingdom of Saudi Arabia
Medical Director-Richard Forster, MD

**Medical Attending-Urgent Care Medical Clinics: 1988-1989**
Kaiser Permanente Hospital
99 Monticello Road
San Rafael, California 94909
Director-Mollie Caulfield, MD

## COMMUNITY & VOLUNTEER SERVICE:
- Providing Primary Medial Care/Clinical Precepting at The San Francisco Free Clinic (SFFC) for the urban, underserved patients who have no health insurance
- Board member – Friends of the Redwoods (A senior Residential Housing/Continuing Care Retirement Community), Mill Valley, California: 10/02-10/03
- San Francisco Opera Physician: 2001 Season

## COMMUNITY & VOLUNTEER SERVICE (con't):
- Candlestick Park Stadium Physician (San Francisco Giants:1988-1990)
- Active local House Call practice (with PA support), including underserved, debilitated, home-bound patients
- Red Cross Volunteer (2005) – Hurricane Katrina Medical Relief Team – Baton Rouge, Louisiana
- Intersect Health Foundation (2005) – Co-founded (with Kate McElroy Fullerton, PA-C) to coordinate and rapidly deploy first responder medical teams for natural and terrorist domestic disasters (aka: "Doctors Within Borders")
- Medical Faculty at St. Mary's Hospital – Clinical Instructor in the urban, underserved community general internal medicine teaching site (Sister Mary Philippa Health Center-2006)

## MEDICAL ADMINISTRATIVE EXPERIENCE:
Dr. Fullerton is currently the Medical Director for **Aegis** of Corte Madera, California (a large Assisted Living & Alzheimer's Assisted Living Facility) and for the Skilled Nursing Facility @ The Redwoods (Mill Valley, CA). He has functioned as the Clinical Director of an HIV/AIDS Ward as well as a Hospice & Palliative Medicine Ward @ Garden Sullivan Hospital-in San Francisco, CA. He has also functioned as Vice Chief (or Acting Chief) of Medicine at two hospitals with training programs (KKESH-in Riyadh, KSA and Garden Sullivan Hospital-in San Francisco, CA). He is considered "The Grandfather" of the current hospitalist movement.

## PUBLICATIONS IN MEDICAL TEXT/JOURNALS:
- Co-authored a chapter in medical textbook- *Pulmonary function in the Immunocompromised Host*
  Fallat, Robert, MD, Fullerton, John H. MD
  **Respiratory Disease in the Immunosuppressed Host** (Published-1990, Lippincott)

- **Transdermal Clonidine and the Cessation of Cigarette Smoking**
  A randomized, placebo-controlled trial of transdermal Clonidine in medically ill patients. Completed and abstract submitted in 1988. Leslie Pederson, MD, John H. Fullerton, MD, and Jeffry Guttas, MD

## AREAS OF RESEARCH INTEREST:
- Treatment of asymptomatic bacteriuria versus placebo in diabetic patients in the Middle East
- Elevated Whole Blood Mercury levels in patients consuming commercial, large predatory fish
- The effects of healing gardens on chronic patient care and quality of life
- The effects of meditation on blood pressure control

## MEDICOLEGAL (EXPERT) EXPERIENCE:)
*Over six (6) years rendering General Medical opinions. Area of major focus (and the majority of clinical practice and clinical instruction) has involved General Internal Medicine medico-legal expert opinions. Provided record reviews, written expert opinions, depositions, courtroom testimony, as well as performing Independent Medical Exams (IME's) for both plaintiff and defense cases. Reviewed up to two Hundred fifty (250) cases (most;y plaintiff medical practice matters) over this time period. Provided expert testimony in approximately seventy (70) discovery/trial depositions and at least seventeen (17) non-Federal trials (approximately 10% for the defense). Currently active (and spending up to 10% of professional time) in medical malpractice, personal injury, product liability, and medical necessity certification cases.*

## ADDITIONAL INFORMATION:
Additional areas of involvement re: lectures and research.

Updated 10/06